OSTROLENK FABER LLP
Max Moskowitz (mmoskowitz@ostrolenk.com)
Ariel Peikes (apeikes@ostrolenk.com)
845 Third Avenue
New York NY 10022
Telephone: (212) 596-0500
Facsimile: (212) 382-0888
*Attorneys for Plaintiff*

UNITED STATES DISTRICFT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OSTROLENK FABER LLP,<br><br>               Plaintiff,<br><br>vs.<br><br>OFFICE DEPOT, INC.,<br><br>               Defendant. | Index No.<br><br><br>**COMPLAINT FOR RECOVERY OF ATTORNEY FEES AND DISBURSEMENTS** |

Plaintiff Ostrolenk Faber LLP ("Ostrolenk") sets forth its claims against Defendant Office Depot, Inc. ("Office Depot") as follows:

1.      This is an action for recovery of legal fees and disbursements.

2.      Plaintiff Ostrolenk is a law firm located at 845 Third Avenue, New York, NY 10022.

3.      Defendant Office Depot is a Delaware corporation with its principal place of business at 6600 North Military Trail, Boca Raton, Palm Beach County, FL 33496.

4.      The Defendant is subject to personal jurisdiction within this Judicial District because Office Depot operates, conducts, engages in, or carries on business in this State, Judicial District, has an office in this District and engaged the services of Ostrolenk for carrying out legal services that involved many investigations and legal work in this State.

5. This Court has jurisdiction over this dispute because of the diversity between the parties and because the involved monetary dispute exceeds the jurisdictional amount required for diversity pursuant to 28 U.S.C. §1332.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391and because acts, i.e., non-payment of monies on legal services rendered, accrued and were committed in this district.

## Factual Background

7. Ostrolenk was established about ninety years ago, and has always focused its practice on intellectual property law.

8. On information and belief, Office Depot is a national chain store that caries thousands of different products, supplied to Office Depot by a hundreds of different product vendors.

9. Sakar International, Inc. ("Sakar") is a manufacturer and importer of electronic and other products, including electrical chargers for mobile phones and similar devices. Sakar is a product supplier to Office Depot.

10. Voltstar Technologies, Inc. ("Voltstar") owns U.S. Patent No. 9,024,581 ("the '581 patent") directed to electrical chargers.

11. In August 2015, Voltstar filed a patent infringement lawsuit against Office Depot in the District Court for the Southern District of Florida, West Palm Beach Division. ("the Voltstar Action"). See Exhibit A hereto.

12. The Voltstar Action alleged that several models of certain electrical chargers being sold by Office Depot infringe upon certain claims of Voltstar's '581 patent. ("the Accused Devices").

13. Certain ones of the Accused Devices were supplied to Office Depot by Sakar, while other models of telephone chargers included in the Accused Devices were supplied to Office Depot by third party vendors ("the Third Party Vendors").

14. Office Depot turned to Sakar and requested that Sakar indemnify, defend and hold Office Depot harmless against the accusations and demands being asserted against it by Voltstar in the Voltstar Action, pursuant to an indemnification agreement between Sakar and Office Depot.

15. Sakar acknowledged its obligation to indemnify Office Depot, and proposed to Office Depot to retain Ostrolenk as defense counsel of Office Depot in the Voltstar Action, agreeing to pay the legal fees and costs incurred by that representation directly to Ostrolenk. In other words, Sakar agreed to pay Ostrolenk's invoices for fees and disbursements involving Ostrolenk's representation of Office Depot in the Voltstar Action.

16. On information and belief, Sakar's recommendation of Ostrolenk to Office Depot was based on Sakar's satisfaction with the legal services that Ostrolenk provided to Sakar over the years on several matters involving Sakar, unrelated to the Voltstar Action, which legal services were rendered to Sakar under the management and supervision of (former) Ostrolenk partner Douglas Miro ("Miro").

17. Based on Sakar's recommendation, Office Depot retained and formally entrusted its representation in the Voltstar Action to Ostrolenk.

18. Ostrolenk accepted the representation and retained the firm of Becker & Poliakoff as local counsel in the Voltstar Action, expecting that Sakar will pay Ostrolenk's invoices on that representation.

19. The Voltstar Action, which commenced in August 2015, concluded in a confidential settlement, considered by both Office Depot and Sakar to be very favorable to them, and the Voltstar Action was formally dismissed by a joint stipulation in September 2016.  See Exhibit B hereto.

20. Throughout, Ostrolenk and its aforementioned local counsel were the only counsel of record for Office Depot, and Ostrolenk was professionally obligated to, carried out, and rendered the services on the Voltstar Action so as to discharge its obligations to represent Office Depot zealously and to the full extent required by the Cannons of Professional Responsibility.

21.     Throughout, Ostrolenk communicated with, reported to Office Depot's in-house counsel, Ms. Kindra Hansen, and also dealt on issues involving the Voltstar Action with another law firm, BakerHostetler, that Office Depot also retained to monitor, coordinate and supervise Ostrolenk's efforts on Office Depot's behalf in the Voltstar Action and to liaison and deal with issues involving the Third Party Vendors.

22.     In all, Ostrolenk's invoices on the Voltstar matter for work performed through May 2016 totaled about $360,000.

23.     There were several settlement discussions involving Voltstar, Office Depot (and the Accused Product Vendors), but as of May 18, 2016, Voltstar was still demanding over $520,000 to settle the Voltstar Action.

24.     Given the foregoing monetary demands of Voltstar and the economic and reputational risks to Office Depot from the perspective of a possible adverse patent infringement holding including a possible injunction, Ostrolenk was obliged to vigorously defend Office Depot, including by conducting the needed discovery, prior art searching, Markman briefings imposed by the Federal District Court under strict time limitations, and by filing and responding to various motions, etc., encountered in the Voltstar Action.

25.     At no time prior to the end of May 2016 was Ostrolenk informed by Office Depot, or by Sakar (which Ostrolenk kept informed about the developments in the Voltstar Action), that any of the services and steps that it was taking were unnecessary, superfluous, or beyond the scope of what was needed to defend Office Depot against the claims in the Voltstar Action.  Indeed, they were not. Moreover, the Cannons of Professional Responsibility imposed on Ostrolenk the obligation to attend to and perform all of the many services that it rendered through May 2016, reflected in the Ostrolenk invoices.

26.     As of May 31, 2016, the District Court denied the litigants' request to stay the proceedings and imposed on the parties the duty to be ready for a so-called Markman Hearing during June 2016, which required Ostrolenk to continue its work on this matter into June 2016.

27. In late May 2016, plaintiff Voltstar changed its stance and offered to settle the matter on terms more favorable to Office Depot and to its vendors, including Sakar, but Sakar rejected the offer as of early June 2016.

28. Initially, in early June 2016, Sakar, which retained the right to approve any settlement of the Voltstar Action, refused to approve any settlement that did not include terms to the effect that the Third Party Vendors must contribute to paying Ostrolenk's invoices in proportion to their sales to Office Depot of the Accused Products.

29. The Third Party Vendors to Office Depot, with whom Ostrolenk coordinated on the settlement discussions refused to agree to contribute to a settlement and refused to accept Sakar's demands that they contribute to payment of Ostrolenk's invoices for services rendered to Office Depot.

30. Eventually, on June 7, 2016, Voltstar extended to Office Depot, via its vendors, settlement terms that are now memorialized in a confidential agreement that led, several months later, to dismissal of the Voltstar Action.

31. The settlement terms have been deemed by Sakar to be very favorable to itself and to its customer Office Depot.

32. The parties informed the District Court on June 7, 2016 that they had reached a settlement and filed papers requesting that all proceedings be suspended to allow them to draft a formal agreement of settlement. The court granted the suspension request.

33. It required intensive negotiations to draft the finally agreed to settlement papers, and these efforts lasted from June until September 2016.

34. The Ostrolenk invoice (a single invoice) for the services rendered during the months June to September 2016 totaled almost $40,000.

35. In all, the Ostrolenk invoices for the active litigation period, through May 2016, totaled about $360,000. The invoices relating to the post May 2016 settlement efforts totaled approximately $40,000, so the total of the invoices came to about $400,000.

36. To date, Sakar has paid Ostrolenk about $160,000, leaving about $239,000 unpaid on the Voltstar Action.

37. Independently of the Voltstar Action, Sakar initiated discussions and filed at least one suit for contribution from the Third Party Vendors of Ostrolenk's invoices, the bulk of which remain unpaid to this day.

38. Ostrolenk filed suit against Sakar seeking payment of the $239,000 left unpaid on the Voltstar Action (plus about $15,000 owed by Sakar relative to matters unrelated to the Voltstar Action).

39. Ostrolenk's suit against Sakar is pending in New York State Supreme Court, New York County, under Index No. 657137/2017.

40. Sakar is refusing to pay the, approximately, $239,000 left unpaid on the Voltstar Action.

41. Parenthetically, Douglas Miro left Ostrolenk in September 2017 to the law firm of Amster Rothstein & Ebenstein ("Amster"), and Sakar transferred its projects and matters to Mr. Miro and to Amster, apparently out of appreciation for and recognition of the good work and capable services that it received on the projects managed and supervised by Mr. Miro.

42. Ostrolenk noticed the Deposition of Sakar, seeking an explanation of Sakar's reasons for the nonpayment of the Ostrolenk invoices on the Voltstar matter that remained unpaid. Sakar produced as its witness Mendy Pearl, its controller and litigations manager.

43. Mr. Pearl essentially testified that:

    a. Office Depot effectively "hijacked" Ostrolenk's (then) partner Mr. Miro for its own purposes, for handling aspects of the Voltstar Action that did not benefit or concern any products supplied by Sakar to Office Depot. In other words, Sakar refuses to pay about $239,000 of the Ostrolenk invoices on the ground that these invoices reflect services that benefited Office Depot and not Sakar; and

   b. because the Voltstar Action ended up in settlement involving little by way of monetary payment to Voltstar, the spending of about $400,000 in legal services and costs appears, in retrospect, to have been unnecessary.

  44. Sakar has also interposed other defenses including that Ostrolenk committed legal malpractice and "over billed" its services on the Voltstar Action.

  45. Ostrolenk denies all of Sakar's allegations that purport to justify Sakar's refusal to pay the subject Ostrolenk invoices.

  46. Regardless, Ostrolenk is left with the specter of Sakar contending that about $240,000 in unpaid invoices relate to services that were rendered only on behalf of and for the sole benefit of Office Depot, even though Office Depot was the sole defendant in the Voltstar Action.

  47. Regardless, Office Depot has maintained that Ostrolenk was its counsel in the Voltstar Action with respect to all issues arising in that case, and also maintained that Sakar had no right to direct, control, or dictate to Ostrolenk or to Office Depot how Ostrolenk is to handle the various aspects of that lawsuit. See the attached **Exhibit C** evidencing the foregoing.

  48. On information and belief, Sakar's refusal to pay Ostrolenk's still unpaid invoices relating to the Voltstar Action are rooted by its disappointment that its efforts to secure "contributions" from the Third Party Vendors have failed, at least from Sakar's perspective.

  49. In any event, even though Ostrolenk expected and looked to Sakar to pay the invoices on the Voltstar Action, it is nonetheless undeniable that Office Depot benefited directly and greatly from Ostrolenk's services that produced to Office Depot a very favorable outcome in the Voltstar Action, including the right to continue selling the Accused Products purchased from Sakar and the Third Party Vendors.

  50. Office Depot was thereby enriched by the legal services that Ostrolenk rendered to it in relation to the Voltstar Action, and to the extent that Ostrolenk is deemed not to be entitled to be paid on those invoices by Sakar, based on Sakar's allegations that Office Depot "hijacked" Ostrolenk to perform for it services that went beyond those required by the Office Depot/Sakar indemnification agreement (which Sakar contends amounts to about $240,000),

Office Depot, having been so unjustly enriched, should be deemed liable to Ostrolenk to pay those invoices.

### FIRST CLAIM FOR RELIEF
(*Unjust Enrichment*)

51. Ostrolenk repeats the allegations contained in paragraphs 1 – 50 of this Complaint as if fully set forth herein.

52. Plaintiff provided services and advanced disbursements for Defendant at the instance and request and for the benefit of Defendant.

53. Defendant was benefitted by Plaintiff's provision of the services.

54. The value of said unpaid services and unreimbursed disbursements is approximately $239,000.

55. Ostrolenk's work was highly specialized and performed by attorneys experienced in intellectual property matters. Ostrolenk's rates are comparable to rates charged by other New York law firms acting in a similar capacity.

56. The amounts contained in the unpaid invoices, totaling about $239,000, reflect the reasonable value of Ostrolenk's legal services and necessary disbursements. The time detailed on the unpaid invoices reflects the actual, necessary time spent on the Voltstar Litigation in which Office Depot was the sole defendant.

57. Sakar, which agreed to indemnify and defend Office Depot in the Voltstar Action, has refused to pay the unpaid invoices on the basis that Office Depot "hijacked" Ostrolenk (former) partner Douglas Miro, Esq., and other Ostrolenk attorneys under Mr. Miro's direction, causing them to perform legal services that only benefitted Office Depot, and were above and beyond Sakar's obligation to indemnify and defend Office Depot in the Voltstar Action.

58. It would be unjust and inequitable to allow Office Depot to retain the benefit of Plaintiff's services without paying Plaintiff.

59. As a result of the above, Plaintiff has suffered damages and Defendant has been unjustly enriched, in an amount to be determined at trial and not less than $239,000, plus interest. from September 2016.

## SECOND CLAIM FOR RELIEF
(*Quantum Meruit*)

60. Ostrolenk repeats the allegations contained in paragraphs 1 – 59 of this Complaint as if fully set forth herein.

61. Plaintiff provided services at the instance and request and for the benefit of Defendant.

62. Plaintiff has not been paid for the services provided by Plaintiff as enumerated above.

63. Plaintiff has demanded that Sakar make the payments due and owing, pursuant to Sakar's commitment to indemnify and defend Office Depot in the Voltstar Action, including paying for the legal services rendered by Ostrolenk for Office Depot. However, Sakar refused to make the payments due and owing to Plaintiff for the services Plaintiff rendered for Office Depot.

64. Defendant should not be permitted to retain the benefit of the services received without being made to pay Plaintiff the reasonable value therefore in the sum of about $239,000, plus interest accruing thereon.

65. Accordingly, Defendant is liable to Plaintiff in an amount to be determined at trial and not less than $239,000 plus interest from September 2016.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Ostrolenk requests that this Court enter judgment in favor of Plaintiff and against Defendant Office Depot in an amount to be determined at trial and not less than $239,000, plus interest accruing thereon from at least September 2016, and grant such other, further and different relief as the Court deems just.

Dated:  New York, New York       __s/ Max Moskowitz___
        November 19, 2018

OSTROLENK FABER LLP
Max Moskowitz
mmoskowitz@ostrolenk.com
Ariel Peikes
apeikes@ostrolenk.com
845 Third Avenue
New York, NY 10022
Telephone: (212) 596-0500
Fax:         (212) 382 0888

*Attorneys for Plaintiff*
*Ostrolenk Faber LLP*

## DEMAND FOR JURY TRIAL

Plaintiff Ostrolenk Faber LLP hereby demands trial by jury on all issues triable to a jury.

    /s Max Moskowitz
Max Moskowitz
mmoskowitz@ostrolenk.com
Ariel S. Peikes
apeikes@ostrolenk.com
OSTROLENK FABER LLP
845 Third Avenue
New York, New York 10022
Tel.  (212) 596-0500
Fax  (212) 382-0888